**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 7, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SERGIO MILLAN-TORRES, also
known as Jose Luis Zapata, also
known as Hector Rodriguez-Zapata,

    Defendant - Appellant.

No. 04-2208
(D.C. No. CR-03-1485)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BALDOCK**, and **HARTZ**, Circuit Judges.

    Defendant-Appellant Sergio Millan-Torres, a citizen of Mexico, pleaded

guilty to illegal reentry following removal for commission of an aggravated

felony. At sentencing, due to a prior felony conviction, his offense level and

criminal history category were enhanced under U.S.S.G. §§ 2L1.2 and 4A1.1. On

appeal, Mr. Millan-Torres argues that (1) the sentence enhancements were

---

    [*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

improper under the Guidelines because the state court that rendered his prior conviction lacked jurisdiction and the information properly before the district court failed to establish a prior drug-trafficking offense, and (2) his sentence violates <u>United States v. Booker,</u> _ U.S. _; 125 S. Ct. 738 (2005). Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## Background

In 1993, Mr. Millan-Torres was convicted of a felony drug offense in California state court after selling $20 worth of cocaine to an undercover officer. II R. at 7, ¶ 24. During these proceedings, Mr. Millan-Torres told California officials that his birthdate was February 1, 1974, making him 19 years old at the time. <u>Id.</u> at 8, ¶ 24. He was sentenced by the California adult court to three years imprisonment. While serving his sentence, Mr. Millan-Torres was paroled and removed to his native Mexico. II R. at 4, ¶ 12.

In 2003, Mr. Millan-Torres was apprehended near Columbus, New Mexico. <u>Id.</u> at 3, ¶ 4. He was subsequently indicted for illegal reentry following conviction of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a)(1) and (2), (b)(2), I R. at Doc. 9, to which he pleaded guilty. II R. at 3, ¶ 1. The Presentence Report ("PSR") indicated a base offense level of eight, but recommended a 16-level enhancement under U.S.S.G. § 2L1.2 for a prior felony

drug-trafficking conviction. Id. at 4, ¶ 12. The PSR also recommended that three points be added to Mr. Millan-Torres's criminal history calculation based on the prior California conviction as the sentence exceeded 13 months, id. at 7-8, ¶¶ 24 & 25, and that two points be added because Mr. Millan-Torres was still on parole for the California conviction when he reentered the United States illegally. Id. at PSR Addendum (Apr. 14, 2004).

Mr. Millan-Torres objected to the PSR asserting he had given the wrong birthdate during the prior California proceedings and that in fact he was a juvenile at the time. Id. at PSR Addendum (May 18, 2004). Based on this asserted status, he argued that the California conviction was invalid and violated his due process rights because he was sentenced by a court lacking jurisdiction over him. He also filed a Motion for Downward Departure arguing the PSR recommendation over-represented the seriousness of his criminal history. I R. at Doc. 32; II R. at PSR Second Addendum (June 9, 2004). In support of his motion, Mr. Millan-Torres again argued that he was a juvenile at the time of his prior offense, and he also pointed out that he had not been arrested since the ten-year-old California conviction and that at the time of his arrest he only had 29 days of parole remaining. In response, the Government agreed the parole violation was a minor offense and recommended that his criminal history category be reduced one level. II R. at PSR Second Addendum.

The district court denied Mr. Millan-Torres's Motion for a Downward Departure finding that <u>Custis v. United States</u>, 511 U.S. 485 (1994), precluded it from considering a collateral attack on the prior conviction for reasons other than a complete denial of counsel. III R. at 10. The court then adopted the PSR's factual findings and guideline applications, reduced Mr. Millan-Torres's criminal history category one level as recommended, and sentenced him to 41 months imprisonment, the bottom of the applicable guideline range. <u>Id.</u> at 16-18. Mr. Millan-Torres filed a timely notice of appeal. I R. at Doc. 44.

Discussion

A.     <u>Sentence Enhancements</u>

Faced with a sentencing challenge, we review the district court's factual findings for clear error and the court's interpretation of the Sentencing Guidelines de novo. <u>United States v. Simpson</u>, 94 F.3d 1373, 1380 (10th Cir. 1996). However, arguments that are raised for the first time on appeal are reviewed for plain error. Fed. R. Crim. P. 52(b); <u>United States v. Ruiz-Gea</u>, 340 F.3d 1181, 1185 (10th Cir. 2003). Plain error exists when there is (1) error, (2) that is plain, (3) and effects substantial rights, and (4) "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." <u>Ruiz-Gea</u>, 340 F.3d at 1185 (quotations and citation omitted).

1.     Can Mr. Millan-Torres collaterally attack at sentencing the state conviction used to enhance his sentence?

Section 2L1.2(b) of the Sentencing Guidelines provides for a sixteen-level enhancement for prior drug-trafficking convictions where the sentence exceeds thirteen months.  Likewise, § 4A1.1 provides for a three-point criminal history increase for every "prior sentence of imprisonment exceeding one year and one month."  U.S.S.G. § 4A1.1(a).  Mr. Millan-Torres's sentence was enhanced under both of these provisions based on his prior California drug conviction.  On appeal, he again asserts that his prior conviction was not properly considered at sentencing as he was a juvenile at the time and the adult court lacked jurisdiction over him.

In Custis, the Supreme Court held that a prior conviction used to enhance a federal sentence under the Armed Career Criminal Act ("ACCA") cannot be collaterally attacked at the time of sentencing, except when the attack is based on a complete denial of counsel.  511 U.S. at 487.  We have since applied this holding to enhancements made under the Sentencing Guidelines.  Specifically, we have held that collateral attacks at the time of sentencing, for reasons other than the complete denial of counsel, are not properly considered when they relate to enhancements made under the career offender provisions in U.S.S.G. § 4B1.1, United States v. Garcia, 42 F.3d 573, 581 (10th Cir. 1994), or the criminal history calculation in U.S.S.G. § 4A1.1.  United States v. Simpson, 94 F.3d 1373, 1381-

- 5 -

82 (10th Cir. 1996).

In both Garcia and Simpson, we considered the specific guideline provision at issue and its accompanying commentary and concluded that the Sentencing Guidelines only allow for collateral attacks "'otherwise recognized in law.'" Simpson, 94 F.3d at 1381 (quoting U.S.S.G. § 4A1.2, comment. (n.6) (Nov. 1993)); Garcia, 42 F.3d at 580 (citation omitted). That is, the Guidelines themselves do not provide an independent basis for collaterally attacking a prior conviction. Thus, only those collateral attacks recognized by the Constitution (the Custis exception) or some other provision of law are properly considered. Garcia, 42 F.3d at 580. We see no reason to reach a different conclusion in this case.

The enhancement under § 4A1.1 (criminal history provision) is directly governed by our holding in Simpson. 94 F.3d at 1381-82. Regarding the § 2L1.2 offense-level enhancement, as with the ACCA, this guideline provision speaks solely in terms of a prior "conviction," U.S.S.G. § 2L1.2(b)(1) (If the defendant previously was deported . . . after– a conviction for a felony . . .") (emphasis added); see also Ruiz-Gea, 340 F.3d at 1188 ("the provision speaks of deportation 'after . . . a conviction'"); cf. Custis, 511 U.S. at 490-91 n.1 ("The [ACCA] focuses on the fact of the conviction . . ."), which is an undefined term. And, as we held in United States v. Cisneros-Cabrera, 110 F.3d 746 (10th Cir. 1997), the

only relevant fact for triggering an enhancement under this provision is that the defendant was removed <u>after being convicted</u> for one of the listed felonies. <u>Id.</u> at 748. Whereas the criminal history provisions further refine which prior convictions are properly considered, specifically excluding those that are previously invalidated or vacated, U.S.S.G. § 4A1.2, comment. (n.6) (1993), §2L1.2 has no such limitation. This distinction evidences that under § 2L1.2, the validity, or fact, of the prior conviction is determined at the time of the defendant's removal, but for purposes of calculating criminal history, the validity of the prior conviction is determined at the time the enhancement is being employed. <u>Id.</u> Given this construction, we find it implausible that Congress intended § 2L1.2 to provide for collateral attacks at sentencing. Indeed, if anything, the lack of such Congressional intent is clearer here than in the other Guideline provisions we have previously addressed.

Mr. Millan-Torres suggests § 2L1.2 does contemplate collateral review in that the application notes specify that the sentencing court cannot consider "a conviction for an offense committed before the defendant was eighteen years of age unless such conviction is classified as an adult conviction." U.S.S.G. § 2L1.2, comment. (n.1(A)(iv)) (2003). We disagree. This same limitation exists in § 4A1.1, <u>see</u> U.S.S.G. § 4A1.1, comment. (n.1) (1987) ("A sentence imposed for an offense committed prior to the defendant's eighteenth birthday is counted

under this item only if it resulted from an adult conviction."), and yet we specifically held that provision does not create a right to collateral review at sentencing.  Simpson, 94 F.3d at 1381-82.  Simply because the facts of this case directly implicate the juvenile conviction limitation is insufficient to undermine our prior decision.

Thus, the Supreme Court's holding in Custis is equally applicable to sentences enhanced under the Sentencing Guidelines as the ACCA. Garcia, 42 F.3d at 581.  As Mr. Millan-Torres's prior conviction is "classified as an adult conviction" under California law, the district court properly considered it in enhancing his sentence under the Guidelines.

Recognizing that our prior decisions do not support his position, Mr. Millan-Torres attempts to focus our attention on the Supreme Court's language in Custis categorizing the complete denial of counsel as a "jurisdictional defect." Custis, 511 U.S. at 496 (emphasis added).  In so doing, he suggests this language establishes a broader exception for all collateral attacks based on jurisdictional failings.  No federal court has yet adopted Mr. Millan-Torres' view.[1]  Even

---

[1]The Seventh Circuit, in United States v. Kramer, 225 F.3d 847 (7th Cir. 2000), did allow a collateral attack on a prior state judgment based on lack of personal jurisdiction.  At issue in Kramer was the Child Support Recovery Act ("CSRA"), which established federal criminal liability for parents who willfully fail to pay child support for children living out of state. 18 U.S.C. § 228(a).  Mr. Kramer argued that his conviction under the CSRA was invalid because the underlying state child-support order was a default judgment entered by a court

assuming that <u>Custis</u> intimates a general jurisdictional defect exception, Mr. Millan-Torres would still not prevail.  This is so because, even if he was a juvenile at the time of his prior conviction, under California law the adult court did not lack subject matter jurisdiction over him.  <u>See</u> <u>In re Harris</u>, 855 P.2d 391, 404 (Cal. 1993).  While it is true that California juvenile courts generally have jurisdiction over juvenile offenders, <u>see</u> Cal. Welf. & Inst. Code § 602, because the adult and juvenile courts are considered separate divisions within the county superior court, when the adult court unknowingly sentences a juvenile its actions simply "constitute[] <u>an excess</u> of jurisdiction, not a lack of fundamental jurisdiction."  <u>In re Harris</u>, 855 P.2d at 404.  As such, this is simply not a case where the alleged error in the underlying conviction rises to the same level of "jurisdictional defect" as that contemplated in <u>Custis</u>.

2.      <u>Was Mr. Millan-Torres's sentence properly enhanced for a prior "drug-trafficking offense"?</u>

---

lacking personal jurisdiction over him.  Pointing to <u>Custis</u>, the government argued Mr. Kramer's collateral attack was not appropriate.  However, the Seventh Circuit concluded that in deciding whether a collateral attack is permissible under <u>Custis</u> it must "focus on the particular statutory scheme at issue and decide whether Congress expected courts to evaluate the validity of the underlying judgment." <u>Id.</u> at 853.  And based on the circumstances before it, the court concluded that "there is no indication that . . . Congress ever intended to abrogate the traditional rule that a default judgment procured without personal jurisdiction is a nullity." <u>Id.</u> at 857.  Thus, the Seventh Circuit based its decision on the statutory analysis suggested in <u>Custis,</u> and not the decision's "jurisdictional defect" language, as is being requested of us in this case.

Next, Mr. Millan-Torres argues his enhancement under § 2L1.2(b)(1)(A)(I) was in error because the California statute he was convicted under does not establish that he was convicted of a drug-trafficking offense as defined in § 2L1.2 under the categorical approach adopted in Taylor v. United States, 495 U.S. 575 (1990). As Mr. Millan-Torres concedes, this argument is raised for the first time on appeal, and thus we review for plain error. Fed. R. Crim. P. 52(b); Ruiz-Gea, 340 F.3d at 1185.

The Taylor Court held that in deciding whether a prior conviction constitutes a "crime of violence" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), the trial court can only consider "the fact of conviction and the statutory definition of the prior offense." 495 U.S. at 602. This has been termed a "categorical approach." United States v. Martinez-Candejas, 347 F.3d 853, 858 (10th Cir. 2003). In Taylor, the Court applied this approach to convictions resulting from a verdict, and recently the Court extended this holding to convictions resulting from a plea as well. Shepard v. United States, __ U.S. __, 125 S. Ct. 1254 (2005). We have applied this categorical approach in deciding whether a prior conviction is a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). See United States v. Frias-Trujillo, 9 F.3d 875, 877 (10th Cir. 1993). However, as our opinion in Martinez-Candejas, makes clear, the categorical approach does not apply to all of the predicate felony

offenses listed in § 2L1.2. In <u>Martinez-Candejas</u>, we recognized that the Court's opinion in <u>Taylor</u> stressed 18 U.S.C. § 924(e)'s language defining a "crime of violence" as a crime that "has as an element" the use or threat of force. <u>Martinez-Candejas</u>, 347 F.3d at 858 (citations omitted). It was this specific wording that indicated Congress's intent to make the statute of conviction, and not the underlying offense conduct, controlling as to whether the enhancement provision applies.[2] However, when the enhancement provision is not defined "in terms of offenses and their elements," there is no like indication that the underlying facts are irrelevant in applying the enhancement. <u>Id.</u> at 859. As such, we concluded that the categorical approach does not apply to § 2L1.2(b)(1)(vii)'s enhancement for "an alien smuggling offense," as this category is not defined in terms of specific elements or offenses. <u>Id.</u>

Whether § 2L1.2(b)(1)(i)'s enhancement for "a drug trafficking offense" is subject to the categorical approach as Mr. Millan-Torres argues is a question we have not yet decided. <u>Cf.</u> <u>United States v. Madera-Madera</u>, 333 F.3d 1228, 1233 (11th Cir. 2003) (holding that § 2L1.2's "drug-trafficking offense" category is also not defined in terms of elements like other categories within this provision).

---

[2]In <u>Shepard,</u> the Court reiterated that <u>Taylor</u> is a decision of statutory interpretation. 125 S. Ct. at 1261. Further, the Court noted that Congress's failure to modify the statute in the 15 years since <u>Taylor</u> was decided indicates the decision is in accord with Congressional intent. <u>Id.</u>

Because we conclude we would reach the same result whether we applied the categorical approach or considered the facts underlying Mr. Millan-Torres's conviction, we do not need to decide the issue in this case either.[3] The application notes to § 2L1.2 define "drug trafficking offense" as "an offense . . . that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2, comment. (n.1(B)(iv)) (2003). The California statute Mr. Millan-Torres was convicted under provides that every person who "transports, imports . . ., sells, furnishes, administers, or gives away, or offers to transport, import . . ., sell, furnish, administer, or give away, or attempts to import . . . or transport [a controlled substance] . . ., shall be punished." Cal. Health & Safety Code § 11352.

Comparing these two provisions, each of the acts prohibited in the California statute fall within the Guideline definition of a "drug trafficking offense." Madera-Madera, 333 F.3d at 1233 ("[T]he Commission defined drug trafficking by the type of conduct prohibited by the state statute. Therefore, the

_____

[3]Given our resolution of this issue, Mr. Millan-Torres's argument that the district court lacked sufficient "judicially noticeable facts" to conclude he was convicted of a drug-trafficking offense is foreclosed and we will not address it further. See Aplt. Br. at 16-18.

question is not whether the wording of the [state] statute exactly matches the Application Note to the Guideline, but rather whether the federal definition of drug trafficking in the Guidelines is satisfied by [the state statute].)  Indeed, the only close question relates to California's "offers to . . ." language.  However, because the Guideline specifies that offenses which "prohibit" the listed drug activities are drug-trafficking offenses, this language is covered as well. California's statute makes clear that as a matter of policy it has chosen to prohibit certain drug activities, like importation, by punishing not only the completed performance of such acts, but also the "offers to" or "attempts to" perform such acts.  See Madera-Madera, 333 F.3d at 1231-32 (discussing policy of state law in determining whether conviction meets § 2L1.2's definition of drug-trafficking offense).  And whereas the definition does not specify the offense must punish only completed acts, we find that the California statute, as a whole, falls within the "family of offenses" contemplated by the Guideline.  Martinez-Candejas, 347 F.3d at 856.  Thus, the district court did not plainly err in enhancing Mr. Millan-Torres's sentence under § 2L1.2 provision.[4]

_____

[4]Mr. Millan-Torres also argues that given the nature of California's statute, his prior conviction does not conclusively establish an aggravated felony rendering invalid an enhancement on this basis as well.  However, because the district court did not enhance Mr. Millan-Torres's sentence on the basis of an aggravated felony conviction, we need not address this argument.

B.      Booker Argument

Finally, in supplemental briefing, Mr. Millan-Torres argues that his sentence violates Booker v. United States, __ U.S. __, 125 S. Ct. 738, because the district court applied the Guidelines in a mandatory rather than advisory fashion. He does not claim a Sixth Amendment violation, however, making this a non-constitutional Booker error case.[5]  United States v. Gonzalez-Huerta, 403 F.3d 727, 731-32 (10th Cir. 2005) (en banc).  As this argument was also raised for the first time on appeal, we review it for plain error as well.  Id. at 732.

As we held in Gonzalez-Huerta, the first two prongs of the plain error analysis are satisfied in non-constitutional Booker error cases.  However, in this case it is clear that Mr. Millan-Torres cannot satisfy the fourth prong of the analysis.  Under prong four, the defendant must establish that the sentencing error "seriously affects the fairness, integrity, or public reputation of judicial proceedings" before we can exercise our discretion and remand for resentencing. Id. at 736 (citation omitted).  This is a demanding standard and is only met "in those rare cases in which core notions of justice are offended."  Id. at 739.

_____

[5]Mr. Millan-Torres argues that there was constitutional error as the mandatory application of the Guidelines violated his Fifth Amendment right to due process.  However, he does nothing more than boldly assert this violation without establishing the "essential predicate for a due process claim," which we specifically rejected in Gonzalez-Huerta.  403 F.3d 727, 732 n.2 (10th Cir. 2005) (en banc).

- 14 -

Here, as in <u>Gonzalez-Huerta</u>, Mr. Millan-Torres merely provided a citation to <u>United States v. Hughes</u>, 396 F.3d 374, 381 (4th Cir. 2005), in support of the fourth prong, which is woefully insufficient. <u>Gonzalez-Huerta</u>, 403 F.3d at 737 ("Providing this quotation is a far cry from establishing that a miscarriage of justice would occur if we do not remand."); <u>see</u> <u>also</u> <u>United States v. Yazzie</u>, 407 F.3d 1139, 1146 (10th Cir. 2005) (en banc) (same). Further, the facts here are not comparable to those in the cases where we have found the fourth prong satisfied. <u>See</u> <u>United States v. Trujillo-Terrazas</u>, 405 F.3d 814, 820-21 (10th Cir. 2005) (fourth prong satisfied where prior arson conviction involving $35 in damage resulted in 16-level increase and district judge commented he wished he did not have to impose the sentence); <u>United States v. Williams</u>, 403 F.3d 1188, 1200 (10th Cir. 2005) (fourth prong satisfied where significant enhancement was based on momentary gun possession and district judge commented the applicable Guideline sentence was "gross," "immoral"). Mr. Millan-Torres pled guilty to illegal reentry and in so doing admitted to the facts underlying his prior conviction. The district court then considered the PSR and its addendums and reduced Mr. Millan-Torres's criminal history category one level as recommended finding his criminal history was over-represented at the higher level and sentenced him at the bottom of the applicable guideline range. There is nothing in the record evidencing the court was uncomfortable with the resulting sentence,

- 15 -

or that the facts here warrant a different conclusion.  As such, we cannot conclude that Mr. Millan-Torres's sentence is "'particularly egregious' or a 'miscarriage of justice.'" <u>Gonzalez-Huerta</u>, 403 F.3d at 738.

AFFIRMED.


Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge